## Con Daly v. The State.

Constitutional Law. *Partial law.* The act of 1883, ch. 138, creates a·. privilege, and limits the exercise of the privilege to certain corporations, and is a partial law, and unconstitutional.

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county.  J. M. Greer, J.

W. H. Carroll and S. P. Walker for Daly.

Attorney-General Lea for the State.

Cooper, J., delivered the opinion of the court.

The plaintiff in error was indicted in one count for that, on September, 1883, he did unlawfully bet and wager money upon horse races run outside of the

Daly v. The State.

limits of the State of Tennessee. And in a second count for that, on the same day, he did unlawfully bet and wager money upon a horse race run outside of the limits of the State, and unlawfully did aid and abet, assist and encourage the making of certain bets upon said races. The court overruled a motion to quash the indictment, and held the act of 1883, ch. 138, under which the defendant claimed to be protected, unconstitutional. The case was then tried upon an agreed state of facts by the court, and judgment rendered against the defendant, from which he appealed in error.

The agreed facts are that Daly did, within six months of the finding of the indictment, and in Shelby county, sell a pool on a race run in the State of Kentucky, on a licensed course of that State; that in making the sale he was acting under and by the authority of the new Memphis Jockey Club, which club was then and now a lawfully chartered and organized blood-horse association under the laws of this State, having its *situs* in the county of Shelby. It was agreed that the judgment should be for or against the defendant, as the court may determine the act of 1883 to be constitutional or not.

The act makes it a misdemeanor, punishable by fine, "for any person to sell pools, or to make any betting book or combination upon any race run, trotted or paced in this State, or in any other State of the United States, unless the said pool-selling, book making or combination be conducted or made under and by the authority of a lawfully chartered or incorpoaated

blood-horse or turf association, or trotting association, or stock or agricultural fair association of this State, and then only in the county in which said association or fair may be located. It is further enacted. that any association operating under the provisions of this act shall pay an annual tax for the privilege to the State of $100, and that the counties may collect a tax on the same not to exceed the State tax.

By the Code, section 4870, it is made a misdemeanor to bet or wager for money or other valuable thing, and the mere making a bet or wager is indictable, the only effect of adding to the charge of betting the specific game, contest or issue upon which the bet or wager was laid being to throw upon the prosecution the *onus* of proving the fact as alleged: *State* v. *Blackburn*, 2 Cold., 235. In misdemeanors there are no accessories either in name or the order of prosecution. When, therefore, one sustains in misdemeanors a relation which in felony makes an accessory before the fact, if what he does is of sufficient magnitude, he is to be treated as a principal, and the indictment may charge him as such: 1 Bish. Cr. Law, sec. 685; *State* v. *Bonner*, 2 Head, 135; *Harvey* v. *State*, 8 Lea, 113. Betting on a horse race is a misdemeanor under this law if not within the exemption of the Code, sec. 4881, which exemption was intended for the encouragement of the raising of fine stock in this State: *Huff* v. *State*, 2 Swan, 279; *State* v. *Blackburn*, 2 Cold., 235. We held, therefore, that selling a pool on a race run in another State was betting and indictable: *Edwards* v. *State*,

8 Lea, 411. The defendant was properly convicted unless protected by the provisions of the act of 1883, under the agreed facts.

That act is open to the objection of the attorney-general that so far as it is positive in its terms it simply makes unlawful what was unlawful before, and only makes an exemption by implication. But the court must look to the intent of the Legislature, and that intent seems to have been to legalize betting by pool-selling upon races run, trotted or paced in other States, provided the sale was " conducted or made under and by the authority of a lawfully chartered " blood-horse association in the county of its location. This has been attempted to be done, not by · a general law directly increasing the powers of such corporations, but by a general criminal law with an exemption in favor of such corporations.

By the Code, sec. 50, the word person is made to include a corporation, a result which would probably have followed without the general provision. The act under consideration is a general penal statute which undertakes to exempt a particular class of corporations or chartered associations from its purview. The Constitution, Article XI., section 8, provides: "The Legislature shall have no power to suspend any general law for the ᵤ benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to individuals rights, privileges, immunities or exemptions other than such as may be by the same law extended to any

members of the community who may be able to bring himself within the provisions of such law." The same section, it is true, by way of proviso, authorizes the creation of corporations, and the increase and diminution of their powers by general law. But after a corporation is created for any purpose, and with specified powers, it becomes a person within the meaning of our penal laws, or other general laws, and subject, like individuals, to those laws. Its powers may be increased or diminished by general law, but it can no more be exempted than an individual citizen from the purview of a penal law: *Lea* v. *State*, 10 Lea, 478. The exemption of classes of persons, not individuals, from the penalties of prohibiting acts is a different question: *Maney* v. *State*, 6 Lea, 218; *State* v. *Rauscher*, 1 'Lea, 96; and see *Davis* v. *State*, 3 Lea, 376.

The question is, consequently, narrowed down to this, was the act intended to increase the corporate powers of the particular class of corporations? And clearly it was not, for the powers and privilege is not extended to all of these corporations, but is restricted to such of them as choose to pay an annual tax therefor. What the statute in fact does is to create a new privilege, the right to sell pools, and make betting books upon races run either in or out of the State, and to limit the exercise of this privilege to a certain class of corporations. This cannot be done. A privilege created for individual profit and taxation must be open to every member of the community who may be able to bring himself

within the provisions of the general law which creates the privilege.

To sell pools on horse races, we learn from the counsel of the plaintiff in error, is selling the right to select one of a number of the horses entered for a race upon the chance of his winning, the money of the various purchasers being put into a pool or common fund to be paid, after deducting the seller's commissions, to the successful bidder. In *Bell* v. *State*, 5 Sneed, 507, which was a prosecution for carrying on a "gift enterprise," Judge Caruthers, in delivering the opinion of the court said : "A lottery is a game of hazard, in which small sums are ventured for the chance of obtaining greater. Now what is the case before us? Is it not that species of gaming called a lottery? A small sum is ventured for the chance of a greater; one dollar or five dollars perhaps for a book and the chance of a watch valued at $40. * * So all pay their money, at least in part, for the chance of winning a prize of greater or less value." In the case now under consideration all the money is paid for the chance of winning the whole, less commissions. If a gift enterprise be a lottery, pool selling would perhaps be a lottery also. And our Constitution expressly forbids the legislation to authorize lotteries for any purpose: Const., Art. XI., sec. 5. The point has not been argued, and it is not necessary for us definitely to decide it, or to even intimate an opinion upon it.

Judgment affirmed.